IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Tory McCray (M-10384), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20 C 2497 |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| T. Sage, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tory McCray, a state prisoner in custody at Menard Correctional Center, sues Defendants Sage, Gallagher, Hernandez, Perez, and Ciukaj *pro se* pursuant to 42 U.S.C. § 1983, alleging that they subjected him to excessive force on February 2, 2020, while he was in custody at the Cook County Jail. Defendants move for summary judgment, arguing that the evidence in the record undermines Plaintiff's excessive force claim and establishes that Defendant Ciukaj had no personal involvement in the use of force; Defendants also argue that they are entitled to qualified immunity. *See* [49]. For the reasons stated below, the Court grants in part, and denies in part, Defendants' motion.

I.  **Summary Judgement Standard**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(a) "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is not

demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material facts exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). A fact is material if it might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 508 (7th Cir. 1992).

The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door Cty Sch. Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). Thus, "'summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992) (quoting *Celotex*, 477 U.S. at 322 (1986)); *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019).

When deciding a motion for summary judgment, the Court views the facts in

the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

II. **Local Rule 56.1**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this district. The rule aids the district court, "which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information, in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted.) The Rule requires the moving party to provide a statement of material facts and to support each asserted fact with specific evidentiary material by citation, including the specific page number. LR 56.1(a), (d). The court may disregard any asserted fact that is not supported with such a citation. LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). Mere disagreement remains "inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). The party opposing

summary judgment may also submit "a statement of additional material facts that complies with LR 56.1(d)." LR 56.1(b)(3). A plaintiff's *pro se* status does not excuse him from complying with Local Rule 56.1. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

Consistent with the local rules, Defendants filed a Rule 56.1 statement of material facts with their motion for summary judgment, [51], and they also provided Plaintiff with a Local Rule 56.2 Notice, which explains what Local Rule 56.1 requires of a litigant opposing summary judgment. [52].

In response, Plaintiff submitted a response to Defendants' motion for summary judgment [60]. Despite being advised of the procedures, however, Plaintiff failed to respond to Defendants' LR 56.1 Statement of Facts. Where the parties' statements are properly supported by the cited materials and are not otherwise disputed by the evidence raised by the opposing party, the Court considers those statements as undisputed. *See* LR 56.1(e)(3). And because Plaintiff failed to submit a response to Defendants' Statement of Facts, this Court deems them admitted.

Mindful of these principles, this Court draws the facts below from the Defendants' Local Rule 56.1 statements of material facts [50], Plaintiff's response to the motion [60], and Defendants' reply [65]. The Court has carefully examined each response submitted by the parties for relevancy, evidentiary support, and admissibility in construing the facts of this case and gives deference to Plaintiff's version of the facts where properly presented and supported by admissible evidence. This Court will not consider purely legal arguments, responses lacking evidentiary

4

support, or responses that contradict sworn deposition testimony.

**III. Facts**

Plaintiff, Tory McCray ("Plaintiff") is currently an inmate at Menard Correctional Center. [50] ¶ 1. On February 2, 2020, and at all relevant times herein, Defendant Correctional Officers Timothy Sage, James Ciukaj, Angel Perez, Patrick Gallagher, and Jose Hernandez were employed by the Sheriff of Cook County at the Cook County Department of Corrections (herein after referred to as "CCDOC"). *Id.* ¶¶ 2–6.

On February 2, 2020, CCDOC housed Plaintiff in Division 9, 1G, a segregation unit of Cook County Jail, because of previous incidents of fighting. *Id.* ¶ 10. When Defendants Perez and Sage brought Plaintiff out of his cell to eat dinner on February 2, 2020, Plaintiff became angry, agitated, and upset because he was escorted in handcuffs. *Id.* ¶ 12. When Defendants opened Plaintiff's cell door, Plaintiff became verbally abusive towards Defendants stating, "I'm gonna get wild on you, you think you playing with a kid, I'm going to show you." *Id.* ¶ 13. Defendants asked Plaintiff why he was so irate and what the Defendants could do to assist Plaintiff; Plaintiff stated, "don't worry about it, I'm gonna make you call the [Sergeant]. Just watch what the fuck I do." *Id.* ¶ 14. When escorted to the dayroom table and given his food tray, Plaintiff knocked it to the floor and told Defendants to, "go clean that shit up, bitch." *Id.* ¶ 15. Defendants Sage, Gallagher, Perez, and Hernandez escorted Plaintiff back to his cell. *Id.* ¶ 16. A portion of these events were recorded on video, *Id.* ¶ 11. *See* [55].

5

At approximately 6:27 p.m., Defendants began removing Plaintiff's handcuffs and ordered Plaintiff to place his hands back in his cell to resecure the food port as part of protocol. *Id.* ¶ 17. Officers commonly require inmates to put their hands through the food port to remove restraints. *Id.* ¶ 18. In fact, prior to February 2, 2020, Plaintiff routinely put his hands through the food port so officers could remove restraints without incident. *Id.* ¶ 30. On this occasion, however, Plaintiff refused these orders and stated, "I know what time you motherfuckers get off work and when you get out I'm gonna have somebody waiting to kill you bitch." *Id.* ¶ 19. At the same time, Plaintiff pushed his hands out through the food port and his fingers got caught in between the frame and the food port, causing him to cut his finger. *Id.* ¶ 20. Defendants ceased attempting to close the food port when they noticed that Plaintiff's finger was bleeding. *Id.* ¶ 21.

None of the Defendants struck or hit Plaintiff during the incident on February 2, 2020. *Id.* ¶ 22. None of the Defendants taunted or verbally abused Plaintiff during the incident on February 2, 2020. *Id.* ¶ 23. Prior to February 2, 2020, Plaintiff was present when his cellmate took the food port hostage, which resulted in officers having to intervene and restrain both Plaintiff and his cellmate. *Id.* ¶ 31. And Plaintiff admits that he believes Defendants thought he was trying to do the same thing on this occasion, taking the food port hostage to prevent officers from being able to close the door and secure Plaintiff. *Id.* ¶ 29. Prior to February 2, 2020, Plaintiff has had no disagreements with any of the Defendants. *Id.* ¶ 32.

When Defendants saw that Plaintiff's finger was bleeding, they sent for

Defendant Ciukaj, who arrived on the scene at 6:37 p.m. *Id.* ¶ 24.

Plaintiff was immediately transported to Cermak for medical evaluation and treatment. *Id.* ¶ 25. On February 3, 2020, Cermak medical personnel evaluated Plaintiff and x-rayed his hand; they found no broken bones or fractures but did find some soft tissue swelling and summarized Plaintiff's injury as "trauma to right index finger with superficial laceration." *Id.* ¶ 26. Medical staff evaluated Plaintiff again on February 26, 2020, when he complained his right index finger was still causing him pain; they noted "no swelling or redness," "full ROM," and "no signs of infection," and x-rays showed no fractures. *Id.* ¶ 27.

## IV. Analysis

Given these facts, Defendants move for summary judgment arguing that: (1) evidence in the record undermines Plaintiff's claim of excessive force and any injury he may have suffered was *de minimus*; (2) Defendant Ciukaj was not personally involved in the use of force and thus cannot be liable under § 1983; and (3) Defendants are entitled to qualified immunity.

### A. Defendants' Use of Force

The Court first addresses Defendants' arguments that the record establishes no genuine issues of material fact relating to Plaintiff's allegation of excessive force. Because Plaintiff was a pretrial detainee at the time of the incident, his excessive force claim arises under the Fourteenth Amendment's Due Process clause. *See Kingsley v. Hendrickson*, 576 U.S. 389 (2015); *Miranda v. County of Lake*, 900 F.3d 335, 350-51 (7th Cir. 2018). Under the Fourteenth Amendment, an officer's use of

7

force is excessive where it "amounts to punishment," is "not rationally related to a legitimate governmental purpose," or "appears excessive in relation to that purpose" when viewed objectively. *Id.* (quoting *Bell v. Wolfish,* 441 U.S. 520 (1979)).

To prevail on an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396–97. Whether the force was objectively unreasonable "turns on the facts and circumstances of each particular case," and depends upon factors such as "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; and any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397 (quotation marks and citations omitted). The Court considers these factors from the perspective of what a reasonable officer on the scene would have understood, not through the lens of hindsight. *Id.*

Defendants have submitted as evidence the incident report, and two digital video exhibits seeking to support their argument that the force complained of was reasonable. But neither video captures Defendants' use of force after Plaintiff took his chuckhole hostage. The first video shows 40 minutes of footage taken from a stationary camera covering the common area, where the inmates apparently eat. *See* [55]. The video (which has no audio) shows the officers bringing Plaintiff down to the common area for lunch (and he appears to be shouting at them), shows Plaintiff deliberately throw his food container across the room, and shows the officers taking

8

Plaintiff back up the stairs, presumably to his cell, then shows them bringing him back down the stairs a few minutes later, and shows them walking him out of the common room, presumably heading to the medical unit. See [55]. But his cell door is not visible in the frame, and the actual use of force around the chuckhole thus is not captured.

The second video, which does include some audio, shows events following the use of force when Plaintiff was escorted to the medical unit for treatment for his injuries. These videos do not necessarily undermine Plaintiff's claim. Although the incident report describes Plaintiff's aggressive and unreasonable behavior prior to the use of force (which is confirmed by the videos), the undisputed record shows that Defendants did use some force in attempting to secure Plaintiff's hands in the chuckhole, and that force caused Plaintiff injury. Additionally, it is undisputed that, when the officers applied force, Plaintiff was already in his cell with his hands cuffed. The Seventh Circuit has held that force is reasonable "only when exercised in proportion to the threat posed, and as the threat changes, so too should the degree of force. . . . It's the totality of the circumstances, not the first forcible act, that determines objective reasonableness." *Abbot v. Sangamon County, Ill.*, 705 F.3d 706, 729 (7th Cir. 2013). Given the absence of video evidence depicting the actual use of force in this case, a jury might credit the Plaintiff's version of events, *see* [60][61], over that of the Defendants, and find that the officers' use of force unreasonable under the circumstances.

9

Defendants also argue that Plaintiff's injury was *de minimus* precluding his excessive use of force claim. Even accepting Defendants' characterization of Plaintiff's injury, that fact may preclude him from obtaining any compensatory damages for mental or physical injury, but it would not preclude him from seeking "nominal and punitive damages." *Calhoun v. DeTella*, 319 F.3d 936, 940-41 (7th Cir. 2003); *see also Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012); *Washington v. Hively*, 695 F.3d 641, 644 (7th Cir. 2012); *Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011).

Based upon the current record, this Court cannot enter summary judgment in favor of Defendants Sage, Gallagher, Hernandez, and Perez.

### B. Defendant Ciukaj

This Court finds that summary judgment is appropriate as to Defendant Ciukaj, however. Liability under the Civil Rights Act requires a defendant's personal involvement in the alleged constitutional violation. *See Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). A supervisory official cannot be held liable for the conduct of his subordinates based upon a theory of *respondeat superior*, and a complaint's allegations must indicate that the supervisory official was somehow personally involved in the constitutional deprivation. *See Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002).

Here, the record establishes that the other Defendants sent for Defendant Ciukaj at 6:37 p.m., after the use of force, which occurred at 6:27 p.m. Because the undisputed portions of the record (including the video exhibits) confirm that

10

Defendant Ciukaj was not present when Defendants Sage, Gallagher, Hernandez, and Perez used the alleged excessive force underlying Plaintiff's claim, he was not personally involved in the use of force, and he may not be held liable for it.

### C. Qualified Immunity

Qualified immunity shields government officials from "civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (internal quotation marks omitted). When evaluating whether qualified immunity applies, the court must ask "two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001); *see also Lane v. Franks*, 573 U.S. 228, 243 (2014). For the law to be clearly established, the "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

As explained above, the record contains genuine issues of material fact as to the alleged violation of Plaintiff's constitutional rights. In addition, it is well established that it is objectively unreasonable for an officer to use significant force on an unresisting or passively resisting subject. *See Abbott*, 705 F.3d 706 at 732 ("it was well-established in this circuit that police officers could not use significant force on non-resisting or passively resisting suspects"); *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir.1996) (dismissing appeal of denial of qualified immunity in excessive force

11

case; issue of fact existed as to whether officers applied "wholly gratuitous" force against subdued suspect not resisting arrest). This prohibition applies even though the detainee may previously have refused to comply with officers' orders or even posed a threat to officer safety. *Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014). Here, although Plaintiff was behaving belligerently in the common room, when the officers applied force to get him to release his hold on the chuckhole he was retrained and locked in his cell. Because the video recordings do not allow the Court to assess the actual use of force at issue here, and the parties dispute the incident itself, summary judgment on qualified immunity grounds remains inappropriate.

## V.     Conclusion

For the reasons stated above, the Court grants in part, and denies in part, Defendants' motion for summary judgment [49]. Because the record establishes that Defendant Ciukaj played no part in the alleged use of force, he may not be liable under § 1983, and the Court dismisses him from the case. The Court denies the motion in all other respects; Plaintiff may proceed on his claim against Defendants Sage, Gallagher, Hernandez, and Perez.

Dated:  September 26, 2022                                        Entered:

                                                                  _____
                                                                  John Robert Blakey
                                                                  United States District Judge